**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| CHEECH AND CHONG'S GLOBAL HOLDING COMPANY, | |
| PLAINTIFF, | CASE NO.: 1:25-CV-14412 |
| V. | |
| THE PARTNERSHIPS IDENTIFIED ON SCHEDULE A, | |
| DEFENDANTS. | |

## COMPLAINT

Plaintiff, Cheech and Chong's Global Holding Company ("C&C" or "Plaintiff"), by its undersigned counsel, hereby complains of the Partnerships identified on Schedule A, attached hereto (collectively, "Defendants"), which use the online marketplace accounts identified therein (collectively, the "Defendant Internet Stores" or "Seller Aliases"), and for its Complaint hereby alleges as follows:

### JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1114, *et seq.*, 15 U.S.C. § 1125, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.      This Court has personal jurisdiction over Defendants, in that Defendants conduct significant business in Illinois and in this Judicial District, and the acts and events giving rise to

this lawsuit, of which Defendants stand accused, were undertaken in Illinois and within this Judicial District.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, since Defendants directly target consumers in the United States, including Illinois, through the fully interactive, commercial Internet stores operating under the Seller Aliases. Defendants are committing tortious acts, engaging in interstate commerce, and wrongfully cause substantial injury in this District.

**JOINDER**

4.      Joinder is proper pursuant to Federal Rules of Civil Procedure 19 and 20(a)(2), as the Defendant Internet Stores likely share the same ownership or alternatively are acting in a coordinated manner, Plaintiff's right to relief stems from the same series of transactions or occurrences, and questions of law and/or fact common to all defendants will arise in the action.

5.      Plaintiff has filed, as **Exhibit 2** attached hereto, its Schedule A list of Seller Aliases detailing the: (1) defendant store names, (2) online marketplace accounts found to be selling counterfeit products, and (3) product titles and images Defendants used to offer for sale, and sell, their counterfeit goods. However, the true identities of the defendants — *i.e.*, the individuals and/or entities operating the Seller Aliases — are not yet known.

6.      In Plaintiff's experience, a significant number of Seller Aliases included in Schedule A are operated by the same individual and/or entity, or at the very least operate in a coordinated manner. It is not until the third-party marketplaces produce the registration data for these stores that the Plaintiff is able to discover the identity or identities of the individuals and/or entities operating the online marketplace accounts.

7.      Given the similarities between the Defendant Internet Stores discussed *infra* and the likelihood that many, if not all, are operated by the same individual and/or entity, and for

purposes of judicial efficiency, Plaintiff asserts that joinder of all defendants is proper at this stage as severing the case would mean that multiple stores with the same operator would be adjudicated piecemeal and/or would need to be re-joined at a later date.

## INTRODUCTION

8.     This action has been filed to combat the online trademark infringement and counterfeiting activity of Defendants, who trade upon Plaintiff's valuable trademarks by selling and/or offering for sale unauthorized, inauthentic, infringing, and counterfeit products in connection with Plaintiff's federally registered trademarks.

9.     Plaintiff, Cheech and Chong's Global Holding Company, is the rights holder of two (2) federally registered trademarks at issue in this suit, listed in the table below – true and correct copies of which are attached hereto as **Exhibit 1** (collectively referred to as the "C&C Trademarks" and "Trademark Registrations").

| TRADEMARK REGISTRATIONS | | | |
|---|---|---|---|
| **REG. NO.** | **MARK** | **CLASS(ES) OF GOODS & SERVICES** | **REG. DATE** |
| 5,105,735 | CHEECH & CHONG | IC 025 – Clothing, namely, [ bandanas, ] baseball caps, beanies, belts, [ berets, ] boxer shorts, caps, headwear, [ infant wear, ] jackets, [ leather jackets, ] pullovers, [ rain jackets, ] socks, sweat pants, sweat shirts, [ sweat shorts, ] sweat suits, t-shirts; Clothing, namely, [ aprons, ascots, ] athletic footwear, athletic shoes, [ athletic uniforms, bath slippers, bathing caps, bathing suits, bathing trunks, bathrobes, beach cover-ups, beach shoes, beachwear, Bermuda shorts, bikinis, blazers, blouses, body shapers, body suits, bras, brassieres, ] briefs, [ camp shirts, cardigans, chef's hats, wrap-arounds, coats, collars, crop tops, cuffs, denim jackets, ear muffs, golf shirts, gym shorts, halter tops, head bands, jeans, ] jogging suits, [ leg warmers, leggings, light-reflecting jackets, lingerie, lounge wear, mock turtle-neck sweaters, money belts, mufflers, neck bands, neckwear, night shirts, pajamas, panties, ] pants, [ polo shirts, ponchos, sandals, sashes, scarves, ] shawls, shirts, shoes, [ shorts, sleep shirts, sleepwear, ] slippers, sneakers, [ sport coats, sport shirts, sun visors, sweat bands, ] sweaters, sweatsocks, [ swim caps, swim trunks, swim wear, swimming caps, | Dec. 20, 2016 |

| TRADEMARK REGISTRATIONS | | | |
|---|---|---|---|
| REG. NO. | MARK | CLASS(ES) OF GOODS & SERVICES | REG. DATE |
| | | swimsuits, ] tank tops [, visors, v-neck sweaters, wind resistant jackets, wrist bands ] | |
| 5,489,180 | CHEECH | IC 025 – Clothing, namely, bandanas, baseball caps, beanies, belts, berets, boxer shorts, caps, headwear, infant wear, jackets, leather jackets, pullovers, rain jackets, socks, sweat pants, sweat shirts, sweat shorts, sweat suits, t-shirts; Clothing, namely, aprons, ascots, athletic footwear, athletic shoes, athletic uniforms, bath slippers, bathing caps, bathing suits, bathing trunks, bathrobes, beach cover-ups, beach shoes, beachwear, Bermuda shorts, bikinis, blazers, blouses, body shapers, body suits, bras, brassieres, briefs, camp shirts, cardigans, chef's hats, wrap-arounds, coats, collars, crop tops, cuffs, denim jackets, ear muffs, golf shirts, gym shorts, halter tops, head bands, jeans, jogging suits, leg warmers, leggings, light-reflecting jackets, lingerie, lounge wear, mock turtle-neck sweaters, money belts, mufflers, neck bands, neckwear, night shirts, pajamas, panties, pants, polo shirts, ponchos, sandals, sashes, scarves, shawls, shirts, shoes, shorts, sleep shirts, sleepwear, slippers, sneakers, sport coats, sport shirts, sun visors, sweat bands, sweaters, sweatsocks, swim caps, swim trunks, swim wear, swimming caps, swimsuits, tank tops, visors, v-neck sweaters, wind resistant jackets, wrist bands | Jun. 12, 2018 |

10.     In an effort to deceptively profit from the C&C Trademarks, Defendants created the Defendant Internet Stores, designed in look, and suggestion, to give the impression to consumers that they are legitimate e-commerce stores selling products authorized by Plaintiff through the use of the C&C Trademarks, with Defendants' ultimate intention being to deceive unknowing consumers into purchasing inauthentic products (hereinafter referred to as the "Counterfeit Products").

11.     Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, tarnishment, loss of control over its creative content, and loss of exclusivity of its valuable trademarks as a result of Defendants' actions and is thus seeking injunctive and monetary relief.

**THE PLAINTIFF**

12.     Plaintiff is a corporation registered in Nevada with its corporate offices located in Danville, CA.

13.     Cheech Marin ("Cheech") and Tommy Chong ("Chong") are one of the most successful comedy duos of all time. Cheech and Chong created some of the most famous and popular comedy albums of the 70's and 80's, including *Big Bambu* and *Los Cochinos*, the latter of which won a Grammy Award for Best Comedy Recording. Cheech and Chong would go on to release several feature-length films, many of which are considered cult-classics, including *Up in Smoke*, *Cheech and Chong's Next Movie*, and *Nice Dreams*. Cheech and Chong's success in their artistic endeavors have earned them millions of fans throughout the world.

14.     Cheech and Chong are not only brilliant comedians, but they are also activists and entrepreneurs. Cheech and Chong were strong proponents of the 2018 Farm Bill, which legalized certain hemp-derived products in the United States. In 2020, Cheech and Chong reunited to begin their hemp-based enterprise, selling FDA regulated and approved hemp-based products across the United States. In 2025, they jointly formed C&C to manage and expand their business ventures.

15.     Plaintiff sells a variety of goods and merchandise, including clothing, such as t-shirts and hats; ash trays; and other various items which are distributed and sold to consumers throughout the United States (herein, the "C&C Products") via their official online store — cheechandchong.com.

16.     Koo Koo Banana, Inc. ("KKB"), a California corporation wholly owned by Cheech Marin, is the sole owner of the federally registered trademark "CHEECH" (the "CHEECH Trademark"), while KKB along with Chong & Chong Entertainment, LLC ("CCE"), a California limited liability company wholly owned by Tommy Chong, are the owners of the federally

registered trademark "CHEECH & CHONG." KKB and CCE have granted Plaintiff the exclusive authority to use, license, and enforce the C&C Trademarks in the United States.

17.     C&C is the exclusive source of C&C Products which typically include feature one of the C&C Trademarks, and below are examples of authentic C&C Products:



18.     The C&C Trademarks are inherently distinctive, valid, subsisting, and in full force and effect. Plaintiff, KKB, and CCE, have exclusively and continuously used the C&C Trademarks. The C&C Trademarks qualify as famous marks, are incontestable under 15 U.S.C. §§ 1115(b) and 1065 and identify products as merchandise originating from Plaintiff.

19.     C&C has expended significant time, energy, money, and resources in developing and promoting the C&C Products. The success of the C&C Products is due in large part to the marketing, promotional, and distribution efforts of C&C.

20.     As a result, the C&C Products are widely known and recognizable, and are exclusively associated by consumers as being official products sourced from Plaintiff. The recognition and goodwill associated with the C&C Products and the C&C Trademarks are of incalculable value to Plaintiff.

21.     C&C has made efforts to protect its interests in and to the C&C Trademarks. C&C and its licensees and affiliates are the only businesses authorized to manufacture, import, export,

advertise, offer for sale, or sell any goods utilizing or featuring the C&C Trademarks. Plaintiff has not licensed or authorized Defendants to use the C&C Trademarks.

## THE DEFENDANTS

22.     Defendants are individuals and/or business entities whose true identities are unknown and often concealed with unverified, incomplete, or false business names, addresses, and contact information. Upon information and belief, all Defendants reside in foreign jurisdictions.

23.     Defendants operate fully interactive commercial websites and online marketplace accounts utilizing, at least, the following marketplaces: AliExpress.com ("AliExpress"), Amazon, Inc. ("Amazon"), eBay, Inc. ("eBay"), SHEIN.com ("Shein"), WhaleCo, Inc. d/b/a Temu ("Temu"), and Walmart, Inc. ("Walmart") (collectively referred to herein as "Online Marketplaces").

24.     Defendant Internet Stores are using and/or has used the C&C Trademarks, without authorization to do so, in connection with the offering for sale, selling, marketing, and distributing of the Counterfeit Products in direct competition with the Plaintiff, from at least June 2025 up to the date of filing, November 25, 2025.

25.     Defendants target the United States, including Illinois, and have offered to sell, and, upon information and belief, have sold and continued to sell Counterfeit Products to consumers in Illinois.

## THE DEFENDANTS' UNLAWFUL CONDUCT

26.     Upon information and belief, Defendants are using the C&C Trademarks without authorization in their product listing titles, product descriptions, and as keywords in the metadata of the Defendant Internet Stores in connection with the offering for sale and selling of the Counterfeit Products. For example:



27.     Defendants' Counterfeit Products are intentionally designed to look identical or similar to genuine C&C Products. Both Plaintiff and Defendants advertise and sell their products using the C&C Trademarks, in the same area and in the same manner, via the Internet, and during the same timeframe.

28.     Defendants' unlawful use of the C&C Trademarks, and unfair competition, draw would-be consumers of Plaintiff's authentic C&C Products away from Plaintiff and to the Defendant Internet Stores.

29.     Defendants use the C&C Trademarks as keywords for their Counterfeit Products, so that would-be consumers will be directed to their stores when searching for authentic C&C Products. For example, Defendants utilize various SEO tactics to enable their Defendant Internet Stores and Counterfeit Product listings to be at the top of search results.

30.     Potential consumers purchasing C&C Products are diverse, with varying degrees of sophistication, likely to have difficulty distinguishing genuine C&C Products from Counterfeit Products.

31.     Consumers who intend to purchase authentic C&C Products are purchasing the Counterfeit Products and are receiving inauthentic, low-quality items which consumers associate with the Plaintiff.

32.     On information and belief, counterfeiters, such as Defendants, operate numerous additional online marketplace accounts and/or e-commerce stores. As such, it is likely that Defendants may be infringing upon Plaintiff's intellectual property in ways not yet determined.

33.     Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $350 billion in annual online sales.[1] According to an intellectual property rights seizures statistics report issued by Homeland Security and the U.S. Customs and Border Protection, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in the fiscal year 2020 was over $1.3 billion.[2] Internet websites and e-commerce stores like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *Id.*

---

[1] *See* "2020 Review of Notorious Markets for Counterfeiting and Piracy," OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, Executive Office of the President. 85 FR 62006 (October 1, 2020).
[2] *See* "Intellectual Property Rights Fiscal Year 2020 Seizure Statistics," U.S. CUSTOMS AND BORDER PROTECTION. CBP Publication No. 1542-092 (September 21, 2021).

34.     As addressed in the *New York Times* and by the U.S. Dept. of Homeland Security, and as reflected in the increase of federal lawsuits filed against sellers offering for sale and selling infringing and/or counterfeit products on the above mentioned digital Online Marketplaces, an astronomical number of counterfeit and infringing products are offered for sale and sold on these digital marketplaces at a rampant rate.[3]

35.     Upon information and belief, Defendants operate in an organized manner, often monitor trademark infringement litigation alert websites, utilize online chat platforms and groups, and use collective efforts in an attempt to avoid liability and intellectual property enforcement efforts.[4] Furthermore, there is a substantial evidentiary overlap in Defendants' behavior, conduct, and individual acts of infringement, thus constituting a collective enterprise.

36.     The Defendant Internet Stores also include notable common features, including use of the same and/or similar listing titles and naming conventions, check-out methods, lack of identifiable contact information, and the use of the same text and images. Additionally, all Defendants sell the same kinds of goods (*i.e.*, clothing, such as hats and t-shirts) which infringe upon Plaintiff's C&C Trademarks. In addition to selling the Counterfeit Products, many Defendants also sell products that appear to infringe upon the intellectual property of others, suggesting large operations built upon counterfeiting and infringement.

37.     Defendants often conceal their identities using fictitious names and addresses to register and operate their network. For example, many Defendants' names and physical addresses used to register the Defendant Internet Stores are incomplete, contain randomly typed letters, or

---

[3] *See* Ganda Suthivarakom, *Welcome to the Era of Fake Products*, N.Y. TIMES (Feb. 11, 2020), https://www.nytimes.com/wirecutter/blog/amazon-counterfeit-fake-products/. *See also Combating Trafficking in Counterfeit and Pirated Goods*, U.S. DEPT. OF HOMELAND SECURITY (Jan. 24, 2020), available at https://www.dhs.gov/sites/default/ files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf.
[4] For this reason, Plaintiff is concurrently filing a Motion For Leave to File Certain Documents Under Seal and Temporarily Proceed Under A Pseudonym.

fail to include cities and other relevant information. Other Defendants use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the Seller Aliases as well as other unknown fictitious names and addresses. These are some of the common tactics used by Defendants to conceal their identities, the full scope and interworking of their massive infringing operation, and to avoid being shut down.

38.    Further, counterfeiters, like Defendants, typically operate multiple payment processor and merchant accounts (collectively referred to herein as the "Payment Processors"), and hide behind layers of payment gateways so they can continue operation in spite of any enforcement efforts. Additionally, as financial transaction logs in previous similar cases have shown, Defendants often maintain offshore bank accounts and regularly move funds from their Payment Processor accounts to said offshore bank accounts, outside the jurisdiction of this Court.

39.    Defendants, without any authorization or license, have knowingly and willfully infringed the C&C Trademarks in connection with the manufacturing, advertisement, distribution, offering for sale, and sale of illegal, infringing, and counterfeit products into the United States and Illinois.

40.    In committing these acts, Defendants have willfully and in bad faith committed the following, all of which have caused, and will continue to cause, irreparable harm to Plaintiff: infringed upon and used counterfeit versions of the C&C Trademarks; created, manufactured, sold, and/or offered to sell Counterfeit Products which infringe upon the C&C Trademarks; used the C&C Trademarks in an unauthorized manner in order to sell, advertise, describe, mislead, and deceive consumers; engaged in unfair competition; and unfairly and unjustly profited from such activities at the expense of C&C.

41.     Unless enjoined, Defendants will continue to cause irreparable harm to C&C.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING**
**(15 U.S.C. § 1114, *et seq.*)**

42.     Plaintiff repleads and incorporates by reference each and every allegation set forth in paragraphs 1-41 as if fully set forth herein.

43.     Plaintiff is the owner of the C&C Trademarks, which have significant value to Plaintiff.

44.     Defendants have used the C&C Trademarks without authorization in commerce and/or offered Counterfeit Products featuring the federally registered C&C Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of the Counterfeit Products.

45.     Without the authorization or consent of Plaintiff, and with knowledge of Plaintiff's well-known ownership rights in its C&C Trademarks, and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied, and/or colorably imitated the C&C Trademarks and/or used spurious designations that are identical with, or substantially indistinguishable from, the C&C Trademarks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of the Counterfeit Products.

46.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff and the C&C Products, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the C&C Trademarks through their participation in such activities.

47.     Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of the C&C Trademarks to packaging, point-of-purchase materials, promotions, and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public, and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with, or are otherwise authorized by Plaintiff, through which Defendants make substantial profits and gains to which they are not entitled in law or equity.

48.     Defendants' unauthorized use of the C&C Trademarks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff, and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the C&C Trademarks.

49.     Defendants' actions constitute willful counterfeiting of the C&C Trademarks in violation of the Lanham Act, 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

50.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss, irreparable injury, and damage to C&C, its business, its reputation, and its valuable rights in and to the C&C Trademarks and the goodwill associated therewith, in an amount as yet unknown. C&C has no adequate remedy at law for this injury, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss, and damage to Plaintiff and its valuable C&C Trademarks.

51. Based on Defendants' actions as alleged herein, C&C is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as well as all gains, profits, and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages, and/or statutory damages of up to $2,000,000 per-counterfeit mark per-type of goods sold, offered for sale, or distributed, and reasonable attorneys' fees and costs.

### COUNT II
### FALSE DESIGNATION OF ORIGIN, PASSING OFF, & UNFAIR COMPETITION
### (15 U.S.C. § 1125(a), *et seq.*)

52. Plaintiff repleads and incorporates by reference each and every allegation set forth in paragraphs 1-41 as if fully set forth herein.

53. Plaintiff, as the owner of all right, title, and interest in and to the C&C Trademarks has standing to maintain an action for false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), *et seq.*

54. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and continues to create a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff.

55. By using the C&C Trademarks in connection with the sale of unauthorized products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the unauthorized products.

56. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the unauthorized products to the general public is a willful violation of the Lanham Act, 15 U.S.C. § 1125.

57.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, and intended to cause confusion, to cause mistake, and to deceive the purchasing public, with the intent to trade on the goodwill and reputation of C&C, its C&C Products, and C&C Trademarks.

58.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to C&C by depriving Plaintiff of sales of its C&C Products and by depriving C&C of the value of its C&C Trademarks as commercial assets in an amount as yet unknown.

59.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

**<u>COUNT III</u>**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS § 510, *et seq*.)**

60.     Plaintiff repleads and incorporates by reference each and every allegation set forth in paragraphs 1-41 as if fully set forth herein.

61.     Defendants have engaged in acts violating Illinois law, including, but not limited to, passing off their unauthorized products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of Defendants' goods, thus causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine C&C Products, through Defendants' representation that Defendants' Counterfeit Products have Plaintiff's approval, when they do not.

62.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

63. The conduct of each Defendant is causing Plaintiff great and irreparable injury and, unless enjoined and restrained by this Court, Defendants will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured monetarily. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

64. Further, as a direct result of the Defendants' acts of trademark infringement, Defendants have obtained profits they would not have otherwise realized but for their infringement of Plaintiff's Trademarks.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the C&C Trademarks or any reproductions, copies, or colorable imitations thereof, in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized C&C Product, or is not authorized by Plaintiff to be sold in connection with the C&C Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the C&C Trademarks;

    c. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or

inventory not authorized by Plaintiff to be sold or offered for sale, and which bear the C&C Trademarks;

d.  further infringing the C&C Trademarks and damaging Plaintiff's goodwill;

e.  using, linking to, transferring, selling, exercising control over the Defendant Internet Stores, Defendants' product listings, or any other online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which bear the C&C Trademarks;

f.  operating and/or hosting websites at the Defendant Internet Stores, and any other online marketplace accounts registered to or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of products or inventory not authorized by Plaintiff which bear the C&C Trademarks;

2)  Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any Online Marketplaces and Payment Processors, and any related entities for the Defendant Internet Stores, shall:

a.  disable and cease providing services for any accounts through which Defendants engage in the sale of products not authorized by Plaintiff which bear the C&C Trademarks;

b.  disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of products not authorized by Plaintiff which bear the C&C Trademarks; and,

c.  take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

3) That Defendants account for, and pay to, Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged;

4) For Judgment in favor of Plaintiff against Defendants that they have willfully infringed Plaintiff's rights in its federally registered Trademarks, pursuant to 15 U.S.C. § 1114;

5) That Plaintiff be awarded actual damages, statutory damages, and/or other available damages, at the election of Plaintiff; and that the amount of damages for infringement are increased by a sum not to exceed three times the amount thereof as provided by 15 U.S.C. § 1117;

6) For Judgment in favor of Plaintiff against Defendants that they have: a) willfully infringed Plaintiff's rights in its federally registered trademarks; and, b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

7) That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

8) Any and all other relief that this Court deems just and proper.

Dated: November 25, 2025      Respectfully submitted,

*/s/ Gouthami V. Tufts*
Ann Marie Sullivan
Alison K. Carter
Gouthami V. Tufts
John J. Mariane

**SULLIVAN & CARTER, LLP**
111 W. Jackson Blvd. Ste 1700
Chicago, Illinois 60604
www.scip.law
929-724-7529
g.tufts@scip.law

***ATTORNEYS FOR PLAINTIFF***